(160 App. Div. 14)

### BAUM v. MORSE DRY DOCK & REPAIR CO.

(Supreme Court, Appellate Division, Second Department.    December 31, 1913.)

1. MASTER AND SERVANT (§ 177*)—INJURIES TO SERVANT—LIABILITY OF MASTER.

Plaintiff's intestate was killed on the floor of a dry dock by teak boards, which fell on him out of a hoist above the deck of a vessel. The boards had been hoisted on to the deck of the vessel, and the defendant's superintendent had ordered men to move them by hand, but as they were very heavy the men, who were fellow servants of the intestate, attempted to use the hoist, and after raising the boards they swung over the side of the vessel and slipped out of the hitch. *Held*, that defendant, the com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mon master, was not liable; the injury being caused by the negligence of a fellow servant, and there being no basis for finding that the defendant was negligent in furnishing an insufficient hoist, or that its superintendent was negligent in failing to ascertain the kind of a hitch used.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 307, 352, 353; Dec. Dig. § 177.*]

2. Costs (§ 109*)—Security for Costs—Administrator as Plaintiff—Non-residents.

In an action by a nonresident appointed the local administrator of an intestate, a motion to require plaintiff to give security for costs must be based on Code Civ. Proc. § 3271, providing that the court may, in its discretion, require a plaintiff suing in a representative capacity to give security for costs, and not section 3268, providing that the defendant may require security for costs in an action by a nonresident.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 439–461; Dec. Dig. § 109.*]

3. Costs (§ 114*)—Security—Motion—Notice.

Where defendant moved to require the plaintiff, an administrator, to give security for costs, he must serve notice of the motion, for the proceeding is under Code Civ. Proc. § 3271, authorizing the court in its discretion to require persons suing in a representative capacity to give security for costs.

[Ed. Note.—For other cases, see Costs, Cent. Dig. § 470; Dec. Dig. § 114.*]

Appeal from Special Term, Kings County.

Action by Henry J. Baum, as administrator of the estate of William Baum, deceased, against the Morse Dry Dock & Repair Company. From a judgment for plaintiff and an order denying its motion for a new trial, defendant appeals. Reversed and remanded. Defendant also appeals from an order denying his motion to require plaintiff to give security for costs. Affirmed.

Argued before JENKS, P. J., and BURR, CARR, RICH, and STAPLETON, JJ.

Pierre M. Brown, of New York City, for appellant.

Edward J. McCrossin, of New York City, for respondent.

BURR, J. The material facts upon which this controversy depends are not disputed. On August 16, 1911, William Baum was in defendant's employ. Upon that date there was a steamship in the dry dock under defendant's control, which was being repaired by it. Its deck rose 50 or 75 feet above the floor of the dry dock. Between 2 and 3 o'clock in the afternoon of that day, Baum was at work upon the floor in close proximity to the vessel's side in sorting out bolts and spikes. To repair the deck of this vessel teak planks were used, about 16 feet long, 10 or 12 inches wide, and 4 inches thick. There is some evidence that each of these planks weighed about 250 pounds. To lift these planks from the floor of the dry dock to the vessel's deck, a derrick, to which was attached a block and fall, was employed. The boom of this derrick swung out over the vessel's side. The fall was dropped to the floor of the dry dock, a chain sling was then fastened about the timber, it was raised by power applied through a winch operated by steam, and when it reached the proper height, by a guy rope, the load

was drawn over the deck of the vessel and there deposited for use. Shortly before 12 o'clock, four of these planks were thus lifted to the vessel's deck and placed a short distance from its side, resting upon a coil of rope. As there was no further material then to be hoisted, the chain sling was taken off and left lying by the side of the planks, so that it might be sent down when the next draft was ready, and the end of the fall was wound "around the four timbers to keep the rope in place there." It was fastened by what was described as a "half hitch." There is evidence that this was not a safe method to employ if the planks were to be moved by the power of the winch. Shortly before Baum was injured, some additional plank was received upon the floor of the dry dock, and it became necessary to move the planks then upon the steamer's deck to make room for this additional material. Defendant's foreman thus testifies, and his testimony is not disputed:

"With reference to the planks on the deck of the ship, I ordered the rigger and two helpers to go on the deck of the ship and remove the lumber that was lying there so that I could make room for the lumber that was to be hoisted up off the dock. I told the rigger, and one helper went up, and I was going to send him another man. I gave him orders to lift the lumber that laid on the deck by hand and lay it over on the hatch out of the way, to make room for the rest of the lumber, so that it would not be walked over."

There was also evidence, which was not disputed, that these planks could be thus moved. The rigger and one of the men went on the deck of the vessel and, after waiting two or three moments:

"The rigger say the stuff will be too heavy for two men to move it with the hand. He wanted to move it with the winch. Finally the rigger started with the winch. There was a piece of rope around this timber. * * * I hold the guy and the stuff went over the rail and dropped down on the dry dock. I tried to hold the guy. I couldn't hold it. He raised it. About eighteen inches, two foot, something like that. The stuff went over the rail and fell through to the dry dock. If I had had another man there, the two of us could have held it. * * * Joe" (meaning the foreman) "was going to send another man, and he didn't send one; the man didn't come; he had not time enough. The man didn't come—two or three minutes—the rigger wanted to move it with the winch."

As these planks swung over the vessel's side, they slipped from their imperfect fastening, and one of them, striking Baum in its fall, caused injuries from which he died.

[1] We fail to see how, either at common law or under the provisions of the Labor Law (Consol. Laws, c. 31 [Laws of 1909, c. 36, as amended by Laws of 1910, c. 352]), the provisions relating to the use of hoists (section 18), or those relating to employers' liability (sections 200–202a), any actionable negligence was established. The planks did not fall through any negligence on the part of the superintendent or any person intrusted with authority to direct, control, or command any employé in the performance of his duty. On the contrary, if we concede that the method actually employed in the attempt to move these planks from one part of the deck to the other was negligent, this was not in obedience to, but in direct defiance of, the orders given to the rigger in respect thereto.

The learned counsel for respondent contends that negligence may be found from the fact that defendant's superintendent testified that

an hour or two before the accident happened he saw these planks lying upon the steamer's deck, and that the chain sling had then been removed from them, and that he then saw or should have seen that the end of the fall had been wrapped about them with this "half hitch," and that it was permissible for the jury, under such circumstances, to find negligence upon his part, in that he did not forbid the use of the derrick to move this material until it had been properly secured. But this is precisely what he did, although not immediately. When it became necessary to remove the plank, he directed that they be moved, not by the derrick, but by hand. The selection of one method and the direction that it should be employed was necessarily the exclusion of the adoption of any other. If he had been obeyed, the removal could have been safely made. Neither can it be successfully urged that defendant had furnished or caused to be furnished a "hoist" which was unsafe or unsuitable or improper. Labor Law, supra, § 18. The derrick was not furnished to be used, at least on this occasion, to remove this lumber, and the wrapping of the rope about the planks was not, according to the testimony of plaintiff's only witness, for the purpose of moving the same.

Neither can negligence be found in the failure to have a sufficient guy rope, or sufficient men to hold the guy rope, to prevent the boom from swinging over the vessel's side. The accident resulted solely from the careless or negligent conduct of one of decedent's fellow servants in using the derrick in a manner for which it was not designed or intended by defendant to be used, and in disobedience of express instructions as to the method to be employed in moving this material. For such negligence the master is not liable at common law, and the disobedient servant occupied no such relation to the master that for such acts the latter would be liable under any statute. Lorenzo v. Faillace, 132 App. Div. 103, 116 N. Y. Supp. 326.

It follows that the judgment and order denying the motion for a new trial must be reversed, and a new trial granted; costs to abide the event.

[2, 3] Defendant also appeals from an order which recites that the motion therefor was made before the joining of issue denying its application that plaintiff give security for costs. Plaintiff was at the time of the commencement of the action and of the making of such motion a nonresident. He is also the administrator of the decedent, appointed by the Surrogate's Court of Kings County. Unless plaintiff is entitled to notice of such application, it would seem that in the first instance defendant was entitled to the order. Mills v. Nassau Bank, 123 App. Div. 514, 108 N. Y. Supp. 559; Hilgenberg v. Great Eastern Casualty & I. Co., 144 App. Div. 411, 129 N. Y. Supp. 240; Schmalz v. Crow Construction Co., 146 App. Div. 623, 131 N. Y. Supp. 398. The question whether such order may be made under the provisions of section 3268 of the Code of Civil Procedure, in which case it is a matter of right and may be had ex parte, or whether it must be made under section 3271 of said Code and whether in such case notice is necessary, is not free from doubt, and the decisions thereon are conflicting. Swift v. Wheeler, 46 Hun, 580; Pursley v. Rodgers,

44 App. Div. 139, 61 N. Y. Supp. 1015; Clarendon v. Milliken Brothers, Inc., 116 App. Div. 930, 101 N. Y. Supp. 1105; Schmalz v. Crow Construction Co., supra; Smiley v. Finucane (Sup.) 134 N. Y. Supp. 59. In Pursley v. Rodgers, supra, Mr. Justice Barrett said that under circumstances similar to those here disclosed the application should be made under section 3271, and he adds:

"When the defendant seeks security as matter of right, he is authorized to proceed ex parte and to apply therefor to the court or to a judge of the court When he invokes discretion under section 3271, he must apply to the court and necessarily upon notice."

While this expression in his opinion was not necessary to the decision of that case, when a similar question came before this court in Clarendon v. Milliken Brothers, Inc., supra, the court in this department, speaking through Mr. Justice Jenks, with whom all the other justices concurred, said:

"I agree with Barrett, J., in Pursley v. Rodgers, 44 App. Div. 139 [61 N. Y. Supp. 1015], that this plaintiff was not required absolutely to give security for costs under section 3268 of the Code of Civil Procedure. Under section 3271 of that Code it was a matter of discretion with the court."

Following this decision, which is the latest utterance upon the subject made in this department, we affirm the order appealed from, with $10 costs and disbursements, upon the ground that notice of the application for such security should have been given, and without prejudice to a renewal of the application therefor upon notice, if defendant is so advised. All concur.